# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIC S. MCGILL, JR.,             :

                           :

    Plaintiff,              :

                           :

    v.                       :

                           :    CIVIL ACTION NO. 19-1712

TIMOTHY L. CLEMENTS,     :

Deputy Warden of Operations of Lebanon  :    (SAPORITO, M.J.)

County Correctional Facility;     :

MICHAEL OTT, Captain of Security of  :    JURY TRIAL DEMANDED

Lebanon County Correctional Facility;  :

ROBERT J. KARNES, Warden of Lebanon :

County Correctional Facility;     :

LEBANON COUNTY;          :

                           :

    Defendants.          :

## AMENDED COMPLAINT

Lebanon County Correctional Facility has held Plaintiff Eric S. McGill, Jr. in solitary confinement for over a year solely because he refuses to cut off his dreadlocks—an act which would violate his Rastafarian religious beliefs. Lebanon County's practice of punishing people who refuse to cut their dreadlocks, without allowing for religious exemptions, violates Mr. McGill's rights under the First and Fourteenth Amendments of the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. Mr. McGill, a pretrial detainee, brings this action for injunctive relief and damages pursuant to 42 U.S.C. § 1983.

1

**JURISDICTION AND VENUE**

1.      Plaintiff brings this action pursuant to 42 U.S.C. § 1983, 28 U.S.C. §§ 2201 and 2202, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1.

2.      The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events and omissions giving rise to the claims occurred in Lebanon County, Pennsylvania, in the Middle District of Pennsylvania.

**PARTIES**

4.      Plaintiff Eric S. McGill, Jr. is an adult Black man currently incarcerated at the Lebanon County Correctional Facility ("LCCF") as a pretrial detainee.

5.      Defendant Lebanon County is a county of the fifth class in Pennsylvania and operates LCCF, a county jail. Lebanon County and LCCF receive federal financial assistance.

6.      Defendant Robert J. Karnes is the Warden of LCCF. He is the chief executive officer of LCCF, approves all LCCF policies, and is the jail's final policymaking authority. He is responsible for the oversight, operation and administration of the LCCF. He is sued in his individual and official capacities.

7.      Defendant Michael Ott is employed as the Captain of Security at LCCF. He is the highest-ranking uniformed officer at LCCF and reviews all of the jail's policies and procedures. He is sued in his individual and official capacities.

8.      Defendant Timothy L. Clements is employed as the Deputy Warden of Operations at LCCF. His responsibilities include reviewing placements in administrative segregation. He is sued in his individual and official capacities.

9.      All Defendants were acting under color of state law at all relevant times.

## FACTS

*Mr. McGill's Dreadlocks and Religious Beliefs*

10.     Mr. McGill is an adherent of the Rastafari religion, or Rastafarianism.

11.     Rastafari is an Afrocentric religion that developed in Jamaica in the 1930s.

12.     Rastafari has adherents throughout the world. Most Rastafarians are of Black African descent.

13.     Mr. McGill wears his hair in dreadlocks and has done so for approximately seven years.

14.     Dreadlocks is a manner of wearing hair that is common for Black people and suitable for Black hair textures.

15.     Dreadlocks form naturally, without any manipulation, in some Black people's hair.

16.     Once hair has naturally formed dreadlocks, it cannot be taken out of dreadlocks; the only way to "remove" natural dreadlocks is to cut them off.

17.     Rastafarians view dreadlocks as a symbol of strength, and keeping their hair in dreadlocks is an important part of the Rastafarian way of life for many adherents.

18.     The importance of dreadlocks for Rastafarians stems in part from the "nazirite vow" taken by Samson in the Bible, which requires that adherents avoid cutting their hair.

19.     Pursuant to his Rastafarian faith, Mr. McGill keeps his hair in dreadlocks.

20.     Mr. McGill believes that his spirit lives through his dreadlocks.

21.     Mr. McGill also believes that his dreadlocks keep him spiritually pure, a requisite for entry into the afterlife.

22.     For Mr. McGill, cutting off his dreadlocks would be akin to cutting off his strength and his spirit.

23.     Mr. McGill was previously incarcerated in a state prison operated by the Pennsylvania Department of Corrections and, while there, he was permitted to keep his hair in dreadlocks, without any punishment or other consequences.

*LCCF's Prohibition of Dreadlocks*

24.     LCCF's Rules and Regulations allow long hair as long as it is tied up or worn in a single pony tail.

25.     The Rules and Regulations prohibit people incarcerated at LCCF from wearing their hair in braids or cornrows, two hairstyles that are frequently worn by Black people.

26.     The Rules and Regulations given to Mr. McGill and other people at LCCF do not prohibit dreadlocks, as dreadlocks are not a form of braids.

27.     Nonetheless, Defendants have a policy, custom, and practice of punishing people who refuse to cut their dreadlocks by housing them in the Security Housing Unit ("SHU"), a form of solitary confinement.

28.     According to Defendant Karnes, "[d]readlocks are considered to be 'braids' for purposes of application of LCCF policy." *See* Affidavit of Robert J. Karnes, ECF Doc. No. 18-1: Exhibit 1, ¶ 8.

29.     Defendant Ott, on the other hand, told Mr. McGill that "the issue of dreadlocks was added after th[e] handbook was printed."

30.     Defendant Karnes has stated that LCCF's prohibition against braids, cornrows, and dreadlocks is due to "inmates' ability to hide contraband and to ensure cleanliness in the correctional facility." *See* Affidavit of Robert J. Karnes, ECF Doc. No. 18-1: Exhibit 1, ¶ 8.

31.     Dreadlocks are not inherently any less clean than any other hairstyle, and they can be kept as clean as hair styled any other way.

32.     Upon information and belief, LCCF's hair policies are not a result of any incidents involving LCCF prisoners hiding contraband in their hair or any other security problems posed by prisoners with dreadlocks.

33.     Any potential risk of people hiding contraband in dreadlocks could easily be addressed through the use of searches.

34.     LCCF does not provide for religious hair exemptions from its rule against dreadlocks.

35.     Dozens of jail and prison systems across the United States, including the United States Bureau of Prisons and the Pennsylvania Department of Corrections permit prisoners to have dreadlocks.

36.     During Mr. McGill's incarceration at LCCF, there have been at least two prisoners with dreadlocks at LCCF who were housed in general population rather than in the SHU.

*Mr. McGill's Placement in Solitary Confinement*

37.     Mr. McGill has been incarcerated at LCCF as a pretrial detainee since January 19, 2019.

38.     Since his arrival at LCCF, Mr. McGill has been housed in the SHU.

39.     The sole reason for Mr. McGill's placement in the SHU is his refusal to cut off his dreadlocks. *See* Affidavit of Robert J. Karnes, ECF Doc. No. 18-1: Exhibit 1, ¶ 14.

40.     Mr. McGill was not cited for violating any LCCF rules prior to his placement in the SHU, and he did not have a misconduct hearing or any other opportunity to formally contest his placement in the SHU.

41.     Nonetheless, Mr. McGill is being punished with indefinite solitary confinement as a result of his refusal to conform to LCCF's policy prohibiting dreadlocks.

42.     Defendants consider Mr. McGill's placement in the SHU to be a form of "administrative segregation."

43.     According to LCCF's Rules and Regulations, a prisoner can only be placed in administrative segregation at the discretion of the Warden or his designee.

44.     Defendants Karnes, Ott, and Clements have all approved of Mr. McGill's placement and continued housing in the SHU as punishment for his refusal to cut off his dreadlocks.

45.     On February 2, 2019, Defendant Ott told Mr. McGill, in a written response to an inmate request form, "If you take [your dreadlocks] out, you will be taken off of Admin. Seg. If not you will remain."

46.     Although LCCF permits prisoners to have long hair if it is tied up or worn in a single ponytail, Defendants have kept Mr. McGill in the SHU despite his offers to tie his hair up.

47.     As of the date of this Amended Complaint, Mr. McGill has been confined in the SHU for 396 days, far longer than is typical in LCCF even for serious misconduct violations.

48.     For example, according to LCCF's Rules and Regulations, the estimated sentences for intoxication, fighting, and threatening an employee with bodily harm range from 30 to 120 days.

*Conditions in the SHU*

49.     Solitary confinement, known by many names, refers to the practice of holding an incarcerated person in a cell between 22 and 24 hours per day, alone or with a cellmate, isolated from normal social interaction with others, and subjected to severe restrictions impacting every aspect of their lives.

50.     As recently noted by the Chief Judge of the United States District Court for the Middle District of Pennsylvania, "[r]esearchers have observed that 'psychological stressors such as isolation can be as clinically distressing as physical torture.'" *Johnson v. Wetzel*, 209 F. Supp. 3d 766, 779 (M.D. Pa. 2016) (quoting Jeffrey L. Metzner, M.D., et al., *Solitary Confinement and Mental Illness in U.S.*

*Prisons: A Challenge for Medical Ethics*, 38 J. AM. ACAD. PSYCHIATRY & LAW 104, 104 (2010)).

51.     The United Nations has long recognized prolonged solitary confinement, for any duration over 15 days, as a form of torture that is banned under the Mandela Rules.

52.     The SHU at LCCF houses prisoners who are in "administrative segregation" as well as those who are in "disciplinary confinement" as punishment for violating prison rules.

53.     Mr. McGill is subject to all of the same restrictions as prisoners who are in disciplinary confinement.

54.     In the SHU, Mr. McGill is given a maximum of one hour of recreation five days per week.

55.     Recreation is outside except when it is raining or snowing. If Mr. McGill chooses not to go outside, he is only given 20 minutes of indoor recreation.

56.     These recreation periods are provided between 12:00 A.M. and 2:00 A.M., at most five days a week.

57.     These are the only times Mr. McGill is permitted to use the phone, which makes it extremely difficult for him to stay in touch with his family, given the late hour.

58.     On Wednesdays and Thursdays, Mr. McGill is only allowed out of his cell for five minutes a day.

59.     In general population, prisoners receive far more out-of-cell time and the out of cell time occurs during daylight hours, allowing people to communicate more easily with their family.

60.     In the SHU, the lights are kept on at all hours, with the exception of 10:00 P.M. – 12:00 A.M.; sometimes the lights are kept on 24 hours a day.

61.     Upon information and belief, in general population, the lights are turned off at night.

62.     In the SHU, Mr. McGill eats all his meals in his cell, while general population prisoners are permitted to eat one to two meals a day outside of their cells.

63.     Mr. McGill is sometimes forced to eat in his cell when there is urine or feces in his toilet that cannot be flushed, as the toilet locks from flushing for an hour if it is flushed twice in five minutes.

64.     Mr. McGill is not permitted to receive books from outside the prison, while prisoners in general population can have books shipped to them by friends and family.

65.     Mr. McGill is only permitted to order certain hygiene and clothing items from commissary; unlike prisoners in general population, he is not permitted to order food from commissary.

66.     Mr. McGill is only permitted one visit per week, which can last a maximum of 30 minutes, while prisoners in general population are permitted up to three visits each week, each of which can last up to 150 minutes.

67.     As a result of these visiting restrictions, Mr. McGill has received far fewer visits from his family—including his two infant children—than he would were he in general population.

68.     Unlike prisoners in general population, Mr. McGill is not permitted to receive photographs in the mail.

69.     The SHU is much dirtier than general population, as SHU prisoners are not given equipment and materials with which to clean their cells. Instead, staff clean the SHU cells once a month.

70.     The corridor outside the SHU cells is also much dirtier than general population, as SHU prisoners are instructed to put their trash, including their food waste, in the hallway, where it stays until inmate workers come and pick it up.

*Mr. McGill's Deteriorating Mental Health*

71.    As a result of his time in solitary confinement, Mr. McGill has been suffering from worsening depression, Post-Traumatic Stress Disorder ("PTSD") and anxiety attacks.

72.    Mr. McGill has experienced anxiety attacks about two to three times a week throughout most of his time in solitary confinement at LCCF.

73.    When Mr. McGill has an anxiety attack, his heart races, he feels dizzy, and he breaks out in a sweat.

74.    His anxiety attacks usually begin when he thinks about the conditions of and the reasons for his placement in solitary confinement.

75.    Mr. McGill was prescribed Trazodone, an anti-depressant drug that is also used to treat anxiety and insomnia, at LCCF, but he continued to have anxiety attacks.

76.    Mr. McGill was also prescribed another anti-depressant drug, Zoloft, while at LCCF.

77.    In late January 2020, he was switched from Trazodone to Remeron, another anti-depressant drug, which he was told would help him sleep better at night.

78.    Mr. McGill had a diagnosis of PTSD prior to his incarceration at LCCF, and it has been exacerbated by his lengthy stay in solitary confinement.

## CAUSES OF ACTION

### Count I: Violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1
(against all individual Defendants in their official capacities and Defendant Lebanon County)

79.     Plaintiff incorporates the allegations contained in each of the preceding paragraphs as if fully set forth herein.

80.     By requiring that Mr. McGill either remain in solitary confinement or cut off his dreadlocks, Defendants have imposed a substantial burden on Mr. McGill's practice of his Rastafarian religious beliefs.

81.     Defendants' requirement that Mr. McGill remain in solitary confinement if he does not cut off his dreadlocks is not the least restrictive means of furthering any compelling government interest.

### Count 2: Deprivation of First Amendment Right to Free Exercise of Religion
(against all Defendants)

82.     Plaintiff incorporates the allegations contained in each of the preceding paragraphs as if fully set forth herein.

83.     By keeping Mr. McGill in solitary confinement because he refuses to cut off his dreadlocks, Defendants have inhibited his right to free exercise of religion for no legitimate penological purpose.

### Count 3: Violation of the Fourteenth Amendment:
### Substantive Due Process
(against all Defendants)

84.     Plaintiff incorporates the allegations contained in each of the preceding

paragraphs as if fully set forth herein.

85.     As a pretrial detainee, Mr. McGill has a right to be free from

punishment.

86.     The individual Defendants have chosen to keep Mr. McGill in solitary

confinement in order to punish him.

87.     Defendants' policy and custom of requiring Mr. McGill to either cut off

his dreadlocks or remain in solitary confinement is not rationally related to any

legitimate non-punitive government purpose.

88.     To the extent Defendants' treatment of Mr. McGill bears some rational

relationship to a legitimate non-punitive government purpose, it is excessive in light

of that purpose.

### RELIEF DEMANDED

WHEREFORE, Plaintiff Eric S. McGill, Jr. respectfully requests that the

Court grant the following relief:

A.     A declaratory judgment that Defendants violated Mr. McGill's rights

under RLUIPA, 42 U.S.C. § 2000cc-1, and the First and Fourteenth Amendments of

the United States Constitution;

14

B.      An injunction requiring Defendants to immediately remove Mr. McGill

from the SHU and place him in general population, with all of the same freedoms

and privileges as other prisoners housed in general population at LCCF;

C.      An award of compensatory damages against all Defendants in an

amount to be determined by the finder of fact;

D.      An award of punitive damages against the individual Defendants in an

amount to be determined by the finder of fact;

E.      Reasonable attorneys' fees and costs; and

F.      Such other relief the Court deems just and proper.


                                        Respectfully submitted,

                                         /s/ Alexandra Morgan-Kurtz
                                        Alexandra Morgan-Kurtz
                                        Attorney I.D. # PA 312631
                                        PA INSTITUTIONAL LAW PROJECT
                                        100 Fifth Ave, Suite 900
                                        Pittsburgh, Pa 15222
                                        T: 412-434-6175
                                        amorgan-kurtz@pailp.org

                                         /s/ Matthew A. Feldman
                                        Matthew A. Feldman
                                        Attorney I.D. # PA 326273
                                        PA INSTITUTIONAL LAW PROJECT
                                        718 Arch Street, Suite 304S
                                        Philadelphia, PA 19106
                                        T: 215-925-2966
                                        F: 215-925-5337
DATE: February 19, 2020                 mfeldman@pailp.org

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Eric S. McGill, Jr., hereby verify under penalty of perjury that the allegations contained in the foregoing Amended Complaint are true and accurate to the best of my knowledge. Executed on

_____2-19-2020_____.


_____
Eric S. McGill, Jr.