## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC S. MCGILL, JR.,<br><br>*Plaintiff,*<br><br>v.<br><br>TIMOTHY L. CLEMENTS, et al.<br><br>*Defendants.* | CIVIL ACTION NO.<br><br>3:19-cv-1712<br><br>SAPORITO, M.J.<br><br>Filed Electronically |

## STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

Respectfully Submitted,

DAVID J. FREED
United States Attorney
Middle District of Pennsylvania

JOSEPEH J. TERZ
Civil Chief
United States Attorney's Office

s/Michael J. Butler
MICHAEL J. BUTLER
Assistant United States Attorney
PA81799
228 Walnut Street
PO Box 11754
Harrisburg, PA  17108-1754
Tel: (717)221-4482
Fax: (717)221-4493
Michael.J.Butler@usdoj.gov

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Special Litigation Section

TIMOTHY MYGATT
Deputy Chief
Special Litigation Section

MARLYSHA MYRTHIL
DEENA FOX
Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
Telephone: (202) 305-1361
Marlysha.Myrthil@usdoj.gov

## Table of Contents

**Table of Authorities** …………………………………………………....iii

**Interest of the United States** …………………………...…..…………...3

**Background** …………………………………………………………...4

**Argument** …………………………………………………...….……7

  A. RLUIPA Establishes An "Exceptionally Demanding" Standard. …………..7

  B. Plaintiff Has Demonstrated That His Religious Exercise Is Substantially Burdened. ……………………………………………………………..9

  C. Defendants are Unlikely to Demonstrate That This Burden Is the Least Restrictive Means of Furthering A Compelling Government Interest. ……11

    1. The Defendants Have Not Demonstrated A Compelling Government Interest. …………………………………………………………….12

    2. Defendants Have Not Established That They are Using the Least Restrictive Means to Further Their Stated Interests. ……………………17

**Conclusion** …………………………………………………………...21

**Certificate of Service** …………………………………………...………………23

# Table of Authorities

Cases

*Church of Lukumi Babalu Aye, Inc.* v. *Hialeah*,
    508 U.S. 520 (1993)........................................................................15
*Cutter v. Wilkinson*,
    544 U.S. 709 (2005)..........................................................................8
*Del. River Port Auth. v. Transamerican Trailer Transp., Inc.*,
    501 F.2d 917 (3d Cir. 1974) ...........................................................1
*Glenn v. Ohio Dep't of Rehab. & Corr.*,
    No. 4:18 CV 436, 2018 WL 2197884 (N.D. Ohio May 14, 2018 .................20
*Greenhill v. Clarke*,
    944 F.3d 243 (4th Cir. 2019) .......................................................10
*Holt v. Hobbs*,
    135 S. Ct. 853 (2015)............................................................. *passim*
*Knight v. Thompson*,
    797 F.3d 934 (11th Cir. 2015)................................................. 12, 13
*Lovelace v. Lee*,
    472 F.3d 174 (4th Cir. 2006) .........................................................9
*Moussazadeh v. Tx. Dep't of Crim. Justice*,
    703 F.3d 781 (5th Cir. 2021) .........................................................9
*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017) ......................................................1, 7
*Rich v. Secretary, Fla. Dep't of Corr.*,
    716 F.3d 525 (11th Cir. 2013) .....................................................12
*Rose v. S.C. Dep't of Corr.*,
    No. 0:18-3315, 2019 WL 7882147  (D.S.C. Dec. 12, 2019)........... 13, 14, 20
*Tucker v. Collier*,
    906 F.3d 295 (5th Cir. 2018) .......................................................14
*Turner v. Safley*,
    482 U.S. 78 (1987)...........................................................................8
*Ware v. La. Dep't of Corr.*,
    866 F.3d 263 (5th Cir. 2017) ................................................. 16, 20
*Warsoldier v. Woodford*,
    418 F.3d 989 (9th Cir. 2005) ....................................................8, 10
*Washington v. Klem*,
    497 F.3d 272 (3d Cir. 2007) .........................................................9

Williams v. Annucci,
    895 F.3d 180 (2d Cir. 2018) .......................................................................14

**Statutes**

37 Pa. Code § 95.228 .......................................................................................7

42 U.S.C. § 2000cc-1 ......................................................................................2

42 U.S.C. §2000cc-1(a) ...................................................................... 2, 9, 12

42 U.S.C. §2000cc-2(f) ...................................................................................4

42 U.S.C. § 2000cc–5(7)(a) ............................................................................9

**Regulations**

28 C.F.R. 551.1 ..............................................................................................20

28 C.F.R. 551.4 ..............................................................................................20

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

Plaintiff Eric McGill, Jr. is a Rastafarian pretrial detainee who alleges that he is being held in solitary confinement at the Lebanon County Correctional Facility (LCCF) because he refuses to cut his dreadlocks, an important element of his religious practice. Am. Compl., ECF No. 30 at 1. He brings a religious exercise claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, and has moved for a preliminary injunction.[1] Under RLUIPA's strict scrutiny analysis, governments must show that restrictions that substantially burden religious exercise are the least restrictive means of furthering a compelling government interest. 42 U.S.C. 2000cc-1(a). Based on the facts presented thus far, the LCCF's blanket restriction on dreadlocks does not pass RLUIPA's demanding test, indicating that Mr. McGill has "a reasonable probability of eventual success in the litigation." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Port Auth. v. Transamerican Trailer Transp., Inc*., 501 F.2d 917, 919-20 (3d Cir. 1974).[2]

---

[1] Plaintiff also brings a religious exercise claim under the First Amendment and a due process claim under the Fourteenth Amendment. Because Plaintiff's Motion for Preliminary Injunction is grounded solely on his RLUIPA claim, the United States does not address Plaintiff's First and Fourteenth Amendment claims.

[2] The United States' interests are implicated in only one of the four factors courts evaluate to determine whether a preliminary injunction is appropriate, the plaintiff's "reasonable probability of eventual success in the litigation," and we therefore do not address the other factors in this brief. *See Reilly*, 858 F.3d at 176.

1

Neither the sincerity of Mr. McGill's Rastafarian beliefs, nor the fact that he is being held in the jail's Security Housing Unit (SHU) for refusing to cut off his dreadlocks is in dispute.  Defs.' Opp. to Mot. Prelim. Inj., ECF No. 45 at 4. Rather, Defendants defend their policy by arguing that his prolonged placement in the SHU constitutes a "*de minimus*" burden on Mr. McGill's exercise of religion. *Id.* at 7.  They also suggest, without explicitly arguing, that their policy or practice of detaining Mr. McGill in the SHU is the least restrictive means of furthering a compelling government interest in safety and security.  *Id.* at 5.

Under RLUIPA, a person who faces substantial pressure to abandon his religious practice is substantially burdened.  Under that standard, Mr. McGill's prolonged placement in the SHU is a substantial burden.  Such burdens cannot be placed on prisoners based on mere speculation.  Instead, institutions must demonstrate that restrictions on religious exercise are not only necessary, but also are the least restrictive means to further a compelling government interest.  And, where other institutions are able to accommodate the requested practice, the institution defending the restriction must persuasively demonstrate why it cannot. Based on the evidentiary record before the Court, Defendants' practice of forcing individuals to choose between cutting off religiously motivated dreadlocks or remaining in the SHU does not meet RLUIPA's strict scrutiny standard.

2

Therefore, Mr. McGill has a reasonable probability of success on the merits, satisfying at least one factor for the issuance of a preliminary injunction.

## Interest of the United States

The United States submits this Statement of Interest because this litigation implicates the proper interpretation and application of RLUIPA. Pursuant to 28 U.S.C. § 517, the Attorney General is authorized "to attend to the interests of the United States" in any case pending in federal court. The Department of Justice is charged with enforcing RLUIPA, *see* 42 U.S.C. 2000cc-2(f), and therefore has an interest in supporting the proper and uniform application of the statute.

## **Background**

Mr. McGill has been growing his hair in dreadlocks for seven years in accordance with his Rastafari religious beliefs.  Am. Compl., ¶¶ 10, 13, 19.[3]  He believes that his dreadlocks "keep him spiritually pure, a requisite for entry into the afterlife."  *Id.* ¶ 21.  The Rastafarian belief that drives Mr. McGill's refusal to cut his dreadlocks stems in part "from the 'nazirite vow' taken by Samson in the Bible, which requires that adherents avoid cutting their hair."  *Id.* ¶ 18.  Consistent with his beliefs, Mr. McGill wore his hair in dreadlocks while previously incarcerated at a Pennsylvania Department of Corrections facility and did not suffer "any punishment or other consequences."  *Id.* ¶ 23.

The Rules and Regulations of the Lebanon County Correctional Facility prohibit inmates from "wear[ing] their hair in braids or cornrows."  Am. Compl., ECF No. 30 ¶ 25; Defs.' Opp. to Mot. Prelim. Inj., ECF No. 45 at 4 (*citing* Karnes Aff., ECF 45-1 ¶¶ 2,3).  LCCF policy makes no mention of dreadlocks, but Defendants contend that "[d]readlocks are considered a form of braided hair that is prohibited under the aforesaid Policy."  Karnes Aff., ECF No. 45-1 ¶ 3.  LCCF's

---

[3] Mr. McGill did not file an affidavit in support of his Motion for Preliminary Injunction, but he signed a "Verification" attached to the Amended Complaint attesting that the allegations contained therein were true and accurate to the best of his knowledge.  We therefore cite to the enumerated paragraphs of the Amended Complaint throughout this brief in place of a separate affidavit.

4

hair policy does not provide a religious exemption.  *See Rules and Regulations of Lebanon County Correctional Facility* ("LCCF Inmate Handbook") 36.[4] Defendants refer generally to safety and security concerns to justify the prohibition against dreadlocks, stating that "long hair styles have been a place in which inmates historically have been able to hide weapons and smuggle contraband in correctional facilities."  Defs.' Opp. to Mot. Prelim. Inj., ECF No. 45 at 4.  They do not point specifically to any incidents at LCCF where weapons or contraband were found in dreadlocks.  *See id.*  Furthermore, Defendants do not cite any incidents of Mr. McGill hiding weapons or smuggling contraband—in his dreadlocks or otherwise.

Notwithstanding their stated safety and security concerns, LCCF policy allows inmates to wear long hair styles so long as they "have [their] hair up, . . . by having it in hair ties or in a single ponytail."  Karnes Aff., ECF 45-1 ¶ 2. Defendants have rejected Mr. McGill's offer to tie up his dreadlocks, in accordance with the rule for long hair.  *See* Am. Compl., ECF No. 30 ¶¶ 34, 46. Despite the stated concern related to contraband, LCCF policy also allows—and, in fact, issues—hats to be worn as part of the official jail uniform.  LCCF Inmate

---

[4] *Rules and Regulations of Lebanon County Correctional Facility*, *available at* http://www.lebcounty.org/depts/Prison_System/Documents/InmateHandbook.pdf (last accessed Apr. 21, 2020).

Handbook 54–55 (citing 37 Pa. Code § 95.228) (listing "1 orange hat (beanie type)" as part of permitted clothing items at the LCCF).

Because he refuses to cut off his dreadlocks, Mr. McGill has been held in the SHU for at least the last nine months of his detention at the LCCF. *See id.* ¶¶ 37–38; Defs.' Opp. Mot. Prelim. Inj., ECF No. 45 at 5. LCCF's policies describe the SHU as "[a]n inmate segregation housing unit specifically designed to house those inmates deemed as disciplinary inmates or inmates classified as threats to institutional security via their respective institutional behavioral history." LCCF Inmate Handbook at 53. Inmates housed in the SHU are detained in their cells approximately 23 hours per day and are allowed one hour out of their cells for recreation, five days per week. *See id.* at 54. In contrast, inmates in general population are allowed recreation seven days per week, with no stated 1-hour limit. *Id.* at 36. Inmates in the SHU are permitted 20 minutes total in the unit's dayroom for showering and making phone calls, *id.* at 54, whereas inmates in general population are permitted out of their cells after inspection at 8:30 am and then must return to their cells for taps and lockup at 9:00 pm. *See id.* at 37. LCCF policy describes the SHU as a "highly restricted area to enhance . . . safety and security" and "create behavior modification" of inmates assigned to that unit. *Id.* at 53.

**Argument**

To obtain a preliminary injunction, one of the factors Mr. McGill must demonstrate is "a reasonable probability of eventual success in the litigation." *Reilly*, 858 F.3d at 176.  Under RLUIPA, a plaintiff first must show that his religious exercise has been substantially burdened, and the burden then shifts to the government to demonstrate that the restriction burdening the plaintiff's religious exercise is the least restrictive means of furthering a compelling government interest.  *See Holt v. Hobbs*, 135 S. Ct. 853, 862-63 (2015).  Because Mr. McGill has shown that his religious exercise has been substantially burdened, and defendants have not established that they have used the least restrictive means to further a compelling government interest in imposing the burden on Mr. McGill, the United States urges the Court to find that Mr. McGill has demonstrated a reasonable probability of success on the merits.

## A.    RLUIPA Establishes An "Exceptionally Demanding" Standard.

RLUIPA protects prisoners' religious liberty by imposing a strict scrutiny standard on limits to religious exercise.  Specifically, the law provides that no government shall substantially burden the religious exercise of a person residing in or confined to an institution, "even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is

the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. 2000cc-1(a).  In establishing this test, Congress "replac[ed] the 'legitimate penological interest' standard articulated in *Turner*."  *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005) (quoting *Turner v. Safley*, 482 U.S. 78 (1987))*; see also Cutter v. Wilkinson*, 544 U.S. 709, 716–17 (2005) (internal quotation marks omitted) (reviewing RLUIPA's legislative history and concluding that "Congress carried over from RFRA the compelling governmental interest/least restrictive means standard" to address the "frivolous or arbitrary barriers imped[ing] institutionalized persons' religious exercise").

In *Holt v. Hobbs*, a case regarding beard length restrictions in the Arkansas Department of Corrections, the Supreme Court held that RLUIPA's test "is exceptionally demanding" and "requires the [State] to show that it lacks other means of achieving its desired goal."  135 S.Ct. at 864 (alterations and internal quotation marks omitted).  If "a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Id.* (internal quotation marks omitted).

RLUIPA's protections extend to any religious exercise regardless of whether it is "compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc–5(7)(a).  Defendants do not dispute the sincerity of Mr. McGill's religious exercise.

**B.      Plaintiff Has Demonstrated That His Religious Exercise Is Substantially Burdened.**

Under RLUIPA, the plaintiff bears the burden of demonstrating that his religious exercise has been substantially burdened.  *Holt*, 135 S. Ct. at 862.  Based on the facts alleged in the Amended Complaint, which the Plaintiff verified and signed, and the information filed in support of the Motion for Preliminary Injunction, Mr. McGill has met his burden.

In *Holt*, the Court found a substantial burden when the government gave an individual a choice between violating his religious beliefs and facing serious disciplinary consequences.  135 S. Ct. at 862.  Similarly, the Third Circuit has explained that a "substantial burden" under RLUIPA exists where:

> 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Washington v. Klem*, 497 F.3d 272,280 (3d Cir. 2007) (emphasis in original); *see also Moussazadeh v. Tx. Dep't of Crim. Justice*, 703 F.3d 781, 793 (5th Cir. 2012) ("Where an inmate is denied a generally available benefit because of his religious beliefs, a substantial burden is imposed on him."); *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (internal quotation marks omitted) (holding that a substantial burden on religious exercise "occurs when a state or local government, through act or omission, put[s] substantial pressure on an adherent to modify his behavior and

9

to violate his beliefs").  Where a grooming policy forces an inmate to choose
between cutting his hair or being disciplined, that policy substantially burdens
religious exercise.  *Holt*, 135 S. Ct. at 862.

In *Warsoldier v. Woodford*, the Ninth Circuit found that a Native American
prisoner who refused to cut his hair and was subjected to a series of punishments
including room confinement, loss of phone calls, expulsion from classes, and
recreation restrictions was substantially burdened.  418 F.3d 989, 996 (9th Cir.
2005) ("Because the grooming policy intentionally puts significant pressure on
inmates such as Warsoldier to abandon their religious beliefs by cutting their hair,
CDC's grooming policy imposes a substantial burden on Warsoldier's religious
practice.").  Recently, the Fourth Circuit considered a challenge to a beard length
policy that "foreclose[d] the privilege of returning to a general population
environment."  *Greenhill v. Clarke*, 944 F.3d 243, 252 (4th Cir. 2019).  The court
concluded that "removing privileges in [an] effort to compel compliance, despite
not physically forcing [an] inmate to cut his hair, qualifies as
[a] substantial burden."  *Id.* at 252 (alterations in original) (internal quotation
marks omitted).  Where prisoners must decide between maintaining their religious
practice or suffering loss of rights and privileges, they are substantially burdened.

Mr. McGill faces just such a choice—the record shows that Plaintiff must
either remain in the SHU, a form of disciplinary confinement with limited

privileges, *see* LCCF Inmate Handbook at 53, or cut his dreadlocks, which directly contravenes his religious practice.  Am. Compl., ¶ 18.  The differences between the SHU and general population are stark.  LCCF Inmate Handbook at 36, 54.  In the SHU, Mr. McGill forfeits hours out of cell each day and submits to days with no recreation at all rather than abandoning his religious exercise.  This loss of benefits available to other prisoners places substantial pressure on Mr. McGill to violate his religious beliefs and cut his dreadlocks.  Defendants' policy and practice thereby constitutes a substantial burden on Plaintiff's religious exercise.

## C.   Defendants are Unlikely to Demonstrate That This Burden Is the Least Restrictive Means of Furthering A Compelling Government Interest.

After a plaintiff has demonstrated a substantial burden on his religious exercise, the burden shifts to the government to show that the challenged policy or practice is "the least restrictive means of furthering [a] compelling governmental interest." *Holt*, 135 S. Ct. at 863 (quoting 42 § 2000cc–1(a)).  In their Opposition, Defendants make general assertions that dreadlocks would be difficult to search and create hygiene concerns as justification for their wholesale ban on dreadlocks, but they do not explain these interests with specificity nor explain how this ban is the least restrictive means of furthering a compelling government interest.  Defs.' Opp. to Mot. Prelim. Inj., ECF No. 45 at 4.  To the extent that Defendants' intend to argue they have a compelling government interest in prohibiting dreadlocks,

11

their evidence falls short of RLUIPA's demanding standard, indicating that they are unlikely to succeed on the merits of the claim at trial.

       **1.**    **The Defendants Have Not Demonstrated a Compelling Government Interest.**

                  *i.*    *Speculation or Exaggerated Fears Do Not Establish A Compelling Government Interest.*

The *Holt* Court described the appropriate deference to prison officials as "respect" for their "expertise," that "does not justify the abdication of the responsibility, conferred by Congress, to apply RLUIPA's rigorous standard." *Holt*, 135 S.Ct. at 864. Deference to prison officials does not require "unquestioning acceptance" of justifications for policies or practices that restrict religious exercise. *Id.* In its analysis, a court need not defer to "policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations." *Knight v. Thompson*, 797 F.3d 934, 944 (11th Cir. 2015) (quoting *Rich v. Secretary, Fla. Dep't of Corr.*, 716 F.3d 525, 533 (11th Cir. 2013)).

In this case, Defendants argue that dreadlocks pose a safety and security risk to the LCCF because "[l]ong hair has historically been a way in which contraband and weapons have been smuggled in correctional facilities." Defs.' Opp. Mot. Prelim. Inj., ECF No. 45 at 14. In doing so, they rely on a general assertion about problems dreadlocks have created in "correctional facilities," but do not allege any specific facts about how Mr. McGill's dreadlocks pose a particular safety risk or

any facts about how dreadlocks in general have posed safety problems at the LCCF. Defendants also generally claim that dreadlocks present health concerns, yet provide even less support for this argument.

Defendants' generalized security concerns do not establish a compelling government interest in prohibiting dreadlocks. Restrictions cannot be based on mere assertion and speculation. "Indeed, prison policies 'grounded on mere speculation' are exactly the ones that motivated Congress to enact RLUIPA." *Holt*, 135 S. Ct. at 867 (Sotomayor, J., concurring) (quoting S. Rep. No. 111, 103d Cong., 1st Sess. 10 (1993)). *Cf. Knight*, 797 F.3d at 944–45 (finding prison system's "exceptionless short-hair policy" furthered compelling government interest where evidence established "specific incidents in which male inmates had used long hair to conceal weapons and contraband" and incidents where "prison staff have cut their hands on hidden razors when searching male inmates' long hair"); *Rose v. S.C. Dep't of Corr.*, No. 0:18-3315, 2019 WL 7882147, at *5 (D.S.C. Dec. 12, 2019), (citing prison official's affidavit "swear[ing] that historically, inmates placed sharp objects such as needles, hooks, razors, staples, and other sharp objects and 'traps' in their hair for the purpose of injuring the staff member assigned to search their long hair"), *rep. and rec. adopted in part and*

13

*rejected in part by* 2020 WL 289273 (Jan. 21, 2020).[5]  Broad statements alleging

safety issues without specific evidence supporting the concerns do not pass muster

under RLUIPA.

Furthermore, "RLUIPA . . . requires the Government to demonstrate that the

compelling interest test is satisfied through application of the challenged law *to the*

*person*—the particular claimant whose sincere exercise of religion is being

substantially burdened."  *Holt*, 135 S. Ct. at 863 (emphasis added) (internal

quotation marks omitted).  This means that "the government must justify its

conduct by demonstrating not just its general interest, but its particularized interest

in burdening the individual plaintiff in the precise way it has chosen."  *Williams v.*

*Annucci*, 895 F.3d 180, 190 (2d Cir. 2018); *see also Tucker v. Collier*, 906 F.3d

295, 301 (5th Cir. 2018) (examining RLUIPA's text and concluding that where "an

individualized inquiry results in a wider swath of religious-liberty protection,

[Congress's] interpretive instruction gives us even more reason to use the

---

[5]  *Rose* is not analogous to the case at hand given the specific, uncontested
evidence of a compelling interest in *Rose*.  *Rose v. S.C. Dep't of Corr.*, No. 0:18-
3315, 2019 WL 7882147, at *5.  Unlike in *Rose*, the Defendants in this case
present no evidence of any incidents involving the Plaintiff or other inmates hiding
contraband in their hair.  Moreover, unlike in *Rose,* Defendants already permit
other types of long hair, and thus the evidence they would need to produce would
be of inmates hiding contraband in dreadlocks, not merely long hair, to be relevant
to the inquiry.  Nor do they present any evidence demonstrating why searching hair
for contraband fails to address their stated safety and hygiene concerns.

14

individualized approach").  Nonetheless, Defendants do not suggest that there is

any reason why Mr. McGill's dreadlocks pose a particular risk.

> ii.    *Evidence that Defendants Can Accommodate Analogous*
>        *Practices Undermines Their Claimed Compelling Interest.*

If an institution permits activities analogous to the requested

accommodation, that suggests that its stated compelling interests are not

compelling.  It also suggests, as is discussed more in the following section, that its

interests can be met using less restrictive means.   In *Holt*, the Court required close

analysis of the prison's grooming restrictions in light of other prison policies.  The

*Holt* Court found that prison officials "failed to establish . . . a meaningful increase

in security risk" between the half-inch beard the prisoner requested and quarter-

inch beards it permitted for medical reasons.  135 S.Ct. at 866.  If the "proffered

[compelling interest] objectives are not pursued" in analogous circumstances, this

"suggests that 'those interests could be achieved by narrower ordinances that

burdened religion to a far lesser degree.'" *Id.* at 865–66 (quoting *Church of Lukumi*

*Babalu Aye, Inc.* v. *Hialeah*, 508 U.S. 520, 546 (1993)).

Here, LCCF policy permits two practices that directly undermine

Defendants' stated safety and security concerns around the smuggling and hiding

of contraband.  First, the same grooming policy that Defendants claim prohibits

dreadlocks—although dreadlocks are not mentioned—expressly allows inmates to

have long hair, provided that it is "in hair ties or in a single ponytail."  Karnes Aff.,

ECF 45-1 ¶ 2; LCCF Inmate Handbook at 36.  Second, LCCF policy permits

inmates to wear beanie-style hats and, in fact, provides them as part of the official

inmate uniform.  *See* LCCF Inmate Handbook at 54–55 (citing Title 37).  To the

extent that dreadlocks might validly present a security risk for the reasons

Defendants assert, those security concerns generally exist in other types of long

hair, which LCCF permits, and LCCF has not given any reason why dreadlocks are

different.  Moreover, a beanie style hat provides an opportunity for inmates to hide

or smuggle contraband in the facility, but these too are allowed.  These policies

and practices cut against LCCF's claim that it could not make a religious

exemption to allow dreadlocks.  *See Holt*, 135 S.Ct. at 866.

Defendants fail to articulate any particular rationale for why dreadlocks pose

greater safety and security risks than other types of long hair or hats, which LCCF

policy expressly allows.  This demonstrates that Defendants' restriction is

underinclusive, which undermines their claimed compelling government interest.

*See Ware v. La. Dep't of Corr.*, 866 F.3d 263, 269 (5th Cir. 2017) (internal

quotation marks omitted) ("If a policy is underinclusive, this fact can raise with it

the inference that the government's claimed interest isn't actually so compelling

after all."). Where, like here, there is evidence of contrary policies, a court may not

defer to prison officials' "mere say-so that they could not accommodate [the

16

plaintiff's] request," because these other policies indicate that a less restrictive

means may be available.  *Holt*, 135 S.Ct. at 866.

> **2.      Defendants Have Not Established That They are Using the Least
> Restrictive Means to Further Their Stated Interests.**

"The least-restrictive-means standard is exceptionally demanding, and it

requires the government to sho[w] that it lacks other means of achieving its desired

goal without imposing a substantial burden on the exercise of religion by the

objecting part[y]."  *Holt*, 135 S. Ct. at 864 (alterations in original) (internal

quotation marks omitted).  As discussed in the previous section, LCCF's failure to

prohibit long hair or hats suggests that its security and hygiene interests could be

met using less restrictive measures, and thus its restriction on dreadlocks fails to

meet RLUIPA standards.  *See Holt*, 135 S.Ct. at 865-66.  Other institutions'

accommodation of dreadlocks likewise indicates that defendants cannot meet their

burden under RLUIPA.

> i.      *Where Other Institutions Can Accommodate the Requested
> Exercise, An Institution Must Accommodate the Practice or
> Provide Persuasive Reasons Why It Is Different.*

Where many institutions can accommodate a religious practice, other

facilities must make the accommodation unless they can provide persuasive

evidence why they are different.  Under *Holt*, other facilities' practices are highly

probative of whether less restrictive policies can be pursued without compromising

a compelling interest.  The Court in *Holt* required a State to "show, in the face of

17

petitioner's evidence, why the vast majority of States and the Federal Government permit" the requested accommodation, "but it cannot." 135 S. Ct. at 866.  When "so many prisons offer an accommodation," *Holt* requires the government to, "at a minimum, offer persuasive reasons why it believes that it must take a different course." *Id.*  *Holt* requires a court to consider "policies followed at other well-run institutions" as "relevant to a determination of the need for a particular type of restriction." *Id.* (citation omitted).  The agency at issue in *Holt* could not shoulder that burden.

The Federal Bureau of Prisons (BOP), the Pennsylvania Department of Corrections, and at least several county jails in the Commonwealth of Pennsylvania allow inmates to wear dreadlocks in the absence of specific safety, security, or hygiene concerns.  *See, e.g.,* Pa. Dep't of Corr., *Inmate Handbook* 13 (G.1.a., Grooming (DC-ADM 807) (2017) ("There are no restrictions in regards to the length of your hair.  Beards, goatees, mustaches, and sideburns are permitted.");[6] Adams Cnty. Adult Corr. Complex, *Inmate Handbook*, 24 (Inmate Rights) ("You will not be restricted in your choice of hairstyle, personal grooming

---

[6]  Pa. Dep't of Corr., *Inmate Handbook* 13 (G.1.a., Grooming (DC-ADM 807) (2017), *available at* https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/2017%20DOC%20Inmate%20Handbook.pdf (last accessed Apr. 21, 2020).

or appearance.");[7] Berks Cnty. Jail, *Inmate Handbook*, § 1.4.1 (Rights) ("You have the right to:  . . . Personal grooming choices regarding appearance, which are limited only by institutional requirements for safety, security, identification, or hygiene.").[8]  BOP's grooming policy states:  "The Bureau of Prisons permits an inmate to select the hair style of personal choice, and expects personal cleanliness and dress in keeping with standards of good grooming and the security, good order, and discipline of the institution."  28 C.F.R. 551.1.  The policy specifies that "[t]he Warden may not restrict hair length if the inmate keeps it neat and clean."  28 C.F.R. 551.4.  There is no restriction on dreadlocks.  *See id*.; *see also* Bureau of Prisons Program Statement 5230.05.  This policy has been in place since at least 1996.  Bureau of Prisons Program Statement 5230.05.  The very accommodation that LCCF indicates it cannot make is already afforded to prisoners in jurisdictions across the country.

  *Holt* demands that a defendant counter evidence that other facilities accommodate a religious practice with evidence as to why it cannot do the same,

---

[7]  Adams Cnty. Adult Corr. Complex, *Inmate Handbook*, 24 (Inmate Rights), *available at* http://www.adamscounty.us/Dept/ACF/Documents/InmateHandbook2011.pdf (last accessed Apr. 21, 2020).

[8]   Berks Cnty. Jail, *Inmate Handbook*, § 1.4.1 (Rights), *available at* https://www.co.berks.pa.us/Dept/Jail/Documents/2020%20INMATE%20HANDBOOK%20-%20FINAL.pdf (last accessed Apr. 21, 2020).

but the Defendants in this case provide no such evidence.  Instead, they cite to one

unpublished district court decision to suggest that not every jurisdiction in the

country permits dreadlocks.  Defs.' Opp. Mot. Prelim. Inj., ECF No. 45 at 9 (citing

*Rose,* No. 0:18-3315, 2019 WL 7882147, at *5).  But, there need not be total

uniformity of practice before a defendant must explain its divergence from other

jurisdictions under RLUIPA.  *Cf. Holt*, 135 S.Ct. at 866 ("That so many other

prisons allow inmates to grow beards while ensuring prison safety and security

suggests that the Department could satisfy its security concerns through a means

less restrictive than denying petitioner the exemption he seeks.").  Defendants must

show why they cannot do what so many other jurisdictions can, and they have

failed to provide any such evidence.

  The Fifth Circuit recently found, in part based on evidence that many

correctional institutions permit dreadlocks consistent with their interests, that

Louisiana's policy prohibiting dreadlocks did not meet RLUIPA's rigorous

standard.  *Ware*, 866 F.3d 263.  The court pointed out that "39 other jurisdictions

(including the U.S. Bureau of Prisons), . . . either outright allow . . . dreadlocks or

afford . . . the opportunity to apply for a religious accommodation that would allow

dreadlocks."  *Id.* at 273; *see also Glenn v. Ohio Dep't of Rehab. & Corr.*, No. 4:18

CV 436, 2018 WL 2197884, at *3–8 (N.D. Ohio May 14, 2018) (granting

Rastafarian plaintiff's motion for summary judgment in RLUIPA claim

challenging prison policies prohibiting dreadlocks and recognizing that these "policies are much more restrictive than those of the vast majority of other states"). That other facilities with similar or even greater security concerns can accommodate dreadlocks suggests that the LCCF can safely accommodate this practice, and they are required to do so under RLUIPA absent persuasive evidence differentiating them from those more accommodating jurisdictions.

## Conclusion

For the foregoing reasons, the Court should find that Mr. McGill has a reasonable probability of eventual success in the litigation.

Respectfully Submitted,

DAVID J. FREED
United States Attorney
Middle District of Pennsylvania

JOSEPEH J. TERZ
Civil Chief
United States Attorney's Office

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Special Litigation Section

TIMOTHY MYGATT
Deputy Chief
Special Litigation Section

*s/Michael J. Butler*
MICHAEL J. BUTLER
Assistant United States Attorney
PA81799
228 Walnut Street
PO Box 11754
Harrisburg, PA  17108-1754

MARLYSHA MYRTHIL
DEENA FOX
Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice

21

Tel: (717)221-4482
Fax: (717)221-4493
Michael.J.Butler@usdoj.gov

950 Pennsylvania Avenue, N.W.
Washington, DC 20530
Telephone: (202) 305-1361
Marlysha.Myrthil@usdoj.gov

Dated: April 21, 2020

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIC S. MCGILL, JR.,

    *Plaintiff,*

      v.

TIMOTHY L. CLEMENTS, et al.

    *Defendants.*

CIVIL ACTION NO.

3:19-cv-1712

SAPORITO, M.J.

Filed Electronically

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2020, I electronically filed the foregoing with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel of record.

Dated: April 21, 2020

                DAVID J. FREED
                United States Attorney

                *s/Michael J. Butler*
                Michael J. Butler
                Assistant United States Attorney

23